UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHONDA S.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-00715-JRS-MJD |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Shonda S. ("Ms. S.") protectively applied for disability insurance ben-
efits ("DIB") and supplemental security income ("SSI") from the Social Security Ad-
ministration ("SSA") on August 2, 2014, alleging an onset date of December 18, 2012.
[ECF No. 5-2 at 35.]  Her applications were initially denied on September 12, 2014,
[ECF No. 5-4 at 2], and upon reconsideration on December 30, 2014, [ECF No. 5-4 at
11; ECF No. 5-4 at 18].  Administrative Law Judge T. Whitaker (the "ALJ") conducted
a hearing on October 31, 2016.  [ECF No. 5-2 at 57-95.]  The ALJ issued a decision on
January 13, 2017, concluding that Ms. S. was not entitled to receive DIB or SSI.  [ECF
No. 5-2 at 32.]  The Appeals Council denied review on January 9, 2018.  [ECF No. 5-
2 at 2.]  On March 8, 2018, Ms. S. timely filed this civil action asking the Court to

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recom-
mendation of the Court Administration and Case Management Committee of the Administrative Office
of the United States courts, the Southern District of Indiana has opted to use only the first name and
last initial of non-governmental parties in its Social Security judicial review opinions.

review the denial of benefits according to 42 U.S.C. §§ 405(g) and 1383(c). [ECF No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. §404.1520(a)(4)(i)-(v),[2] evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One

---

[2] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in most respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only.

through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford,* 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett,* 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. S. was 48 years of age at the time she applied for DIB and SSI. [ECF No. 5-5 at 2.] She has completed a high school education and previously worked in a variety of manufacturing positions. [ECF No. 5-6 at 8-9.][3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Ms. S. was not disabled. [ECF No. 5-2 at 49.] Specifically, the ALJ found as follows:

- Ms. S. last met the insured status requirements for DIB on December 31, 2013 (the date last insured or "DLI").[4] [ECF No. 5-2 at 37.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Ms. S. must prove the onset of disability on or before her DLI to be eligible for DIB. *See Shideler v. Astrue,* 688 F.3d 308, 311 (7th Cir. 2012); *see also* 20 C.F.R. § 404.131. Recognizing that Ms. S. also had a claim for SSI, the ALJ's subsequent findings properly considered the relevant period at issue for that application beginning with the alleged disability onset date, December 18, 2012, through the date of the decision. *See, e.g.,* [ECF No. 5-2 at 49.]

- At Step One, Ms. S. had not engaged in substantial gainful activity[5] since December 18, 2012, the alleged onset date.  [ECF No. 5-2 at 37.]

- At Step Two, she had the following severe impairments: "degenerative disc disease and arthritis of the cervical spine, history of left shoulder injury, osteoarthritis of bilateral knees; degenerative disc disease of the spine with chronic back pain, obesity, chronic tension type headaches, headaches, hypertension, migraine headache, partial seizures, major depression, unspecified depressive disorder with anxious distress, unspecified depressive disorder, generalized anxiety disease and posttraumatic stress disorder."  [ECF No. 5-2 at 37.]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [ECF No. 5-2 at 39.]

- After Step Three but before Step Four, she had the RFC to "lift, push, pull, and carry 20 pounds occasionally and 10 pounds frequently; sit [a] total of 8 hours of an 8 hour workday; stand [a] total of 4 hours in an 8 hour workday; walk [a] total of 2 hours of an 8 hour workday; limited to work that allows the individual to sit and stand alternatively provided that the claimant can sit for a total of 2 hours at one time, stand for a total of 1 hour at one time, and walk for a total of 30-40 feet at one time and further provided claimant is in the new position for at least 2 minutes before resuming the prior positions; never climb ladders, ropes and scaffolds; never climb ramps or stairs; occasional balance; never kneel, crouch or crawl; only occasional stooping but not below the waist; with the dominant left upper extremity only occasional overhead reaching; occasional exposure to respiratory irritants such as fumes, odors, dusts and gases; no exposure to unprotected heights, dangerous machinery; limited to simple, routine, and repetitive work; limited to work with only occasional interaction with the public; only occasional interaction with coworkers; and only occasional interaction with supervisors.  This assessment is consistent with the ability perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b))."  [ECF No. 5-2 at 41-42.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Ms. S.'s RFC, she was incapable of performing any of her past relevant work as a material handler, numerical control machine operator, motor vehicle assembler, spot welder (production line), and electronic component processor. [ECF No. 5-2 at 47.]

---

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

- At Step Five, relying on VE testimony and considering Ms. S.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through the date of the decision, including representative occupations such as a small parts assembler, inspector and hand packager, and plastic hospital product assembler. [ECF No. 5-2 at 47-48.]

## III.
### DISCUSSION

Ms. S. raises three assignments of error, that the ALJ did not (1) properly evaluate an inability to ambulate effectively at Step Three, including with the assistance of an expert, (2) adequately account for the moderate limitations in concentration, persistence, or pace that the ALJ found supported, and (3) consider Ms. S.'s limited activities of daily living.

### A. Inability to Ambulate Effectively

Ms. S. contends that the ALJ did not properly evaluate her claim at Step Three concerning whether Listings 1.02 or 1.04 were met or equaled. [ECF No. 7 at 18.] Specifically, Ms. S. asserts that the ALJ did not properly get expert assistance, consider the full regulatory definition of an inability to ambulate effectively, or confront conflicting evidence that did not support her conclusions. [ECF No. 7 at 18-24.]

To meet an impairment identified in the listings, a claimant must establish, with objective medical evidence, the precise criteria specified in the listing. *See* 20 C.F.R. § 404.1525; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) ("The applicant must satisfy all of the criteria in the Listing in order to receive an award of" benefits at Step Three). In the alternative to meeting a listing, a claimant can establish "medical equivalence" in the absence of

one or more of the findings if she has other findings related to the impairment or has a combination of impairments that "are at least of equal medical significance." *See* 20 C.F.R. § 404.1526(a)-(b). In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing. *See Brindisi ex rel. Brindisi v. Barnhart,* 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart,* 297 F.3d 589, 595-96 (7th Cir. 2003). However, the Seventh Circuit has held that in the absence of a contradictory medical opinion, where there is no significant evidence to support a listing, the ALJ can rely on the consultant reviewing opinions that no listing is met or equaled, even without articulating such reliance in the decision. *Scheck v. Barnhart,* 357 F.3d 697, 700-01 (7th Cir. 2004) (citing *Steward v. Bowen,* 858 F.2d 1295, 1299 (7th Cir. 1988)). The Seventh Circuit precedent is consistent with the ALJ's burden under SSR 96-6p, which states:

> The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review.

> When an administrative law judge or the Appeals Council finds that an individual[']s impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant.

Social Security Ruling ("SSR") 96-6p (S.S.A. July 2, 1996), 1996 WL 374180 at *3.[6]

Both Listing 1.02(A) for major dysfunction of one major weight-bearing joint and Listing 1.04(C) for lumbar spinal stenosis require, in part, that the impairment results "in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02(A) and 1.04(C). While there is some question as to whether Ms. S. presented evidence meeting the other requirements of Listing 1.04(C), it does appear to the Court that the other requirements of Listing 1.02(A) were satisfied. *Id*. Accordingly, an inability to ambulate effectively appears to be a dispositive requirement in this case at Step Three. The referenced regulatory section explains:

b. What We Mean by Inability To Ambulate Effectively

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
[ . . . ]

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently

---

[6] SSR 17-2p rescinded and replaced SSR 96-6p, but only effective March 27, 2017. SSR 17-2p (S.S.A. Mar. 27, 2017), 2017 WL 3928306, at *1. Accordingly, based on the date of the ALJ's decision, SSR 96-6p was controlling.

about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b).

The ALJ specifically discussed both listings raised by Ms. S. [ECF No. 5-2 at 39-40.] The Court does not find any fault in the ALJ focusing her analysis of those listings on the relevant dispositive requirement that she found lacking. The ALJ explained that:

> [Ms. S.] reported an inability to walk without a cane in May 2016 but she walked with a reduced speed and without assistance (Ex. C18F). She was using a cane but it was not prescribed (Ex. C18F). The overall record fails to document an inability to ambulate effectively to listing level severity.

[ECF No. 5-2 at 39.]

Other parts of the ALJ's written decision continue to explain how the ALJ reached the material conclusion that the requirement was not met. *See Rice*, 384 F.3d at 370 n.5 ("it is proper to read the ALJ's decision as a whole, and . . . it would be needless formality to have the ALJ repeat substantially similar factual analyses" throughout the decision.). For example, the ALJ sufficiently explained how she concluded that Ms. S. "uses a cane and wheelchair but they are not established as medically necessary."[7] [ECF No. 5-2 at 46.] As noted above, the regulatory definition of

---

[7] The Court agrees with Ms. S. that the absence of a prescription for an ambulatory aid is of limited probative value. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("A cane does not require a prescription; it had been suggested to the plaintiff by an occupational therapist."). However, the ALJ is required to consider documentation that establishes whether an ambulatory aid is medically required, which would make the presence, at least, of a prescription relevant. *See* SSR 96-9p (S.S.A. July 2, 1996), 1996 WL 374185, at *7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."); *see also* 20 C.F.R. § 402.35(b)(1) ("Social Security Rulings are binding on all components of the Social

an inability to ambulate effectively includes, as one example, lower extremity dysfunction that does not permit independent ambulation without the use of an ambulatory aid(s) occupying both hands.  The ALJ summarized the findings of a consultative examination in May 2016, including that Ms. S. was unable to walk on heels, toes, or in tandem.  [ECF No. 5-2 at 43 (citing ECF No. 5-10 at 77).]  However, the ALJ noted that "[a]lthough she reported she could not walk without a cane, she walked with a reduced speed without assistance.  There was no ataxia, lurching or unsteadiness." *Id*.  (The examination also indicated that Ms. S. had an antalgic gait with limited extensions of the knees, but normal station, sustainability and stability.).  The objective findings support the ALJ's conclusion that a single cane was not medically necessary.  Relevant to the listings, the evidence supports that Ms. S. was able to independently ambulate without the use of an aid.

Furthermore, the Court does not find any substantial error of articulation based on the ALJ's failure to confront conflicting evidence.  The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citations of collected cases omitted).  For one, the ALJ did

Security Administration.").  Medical necessity requires more than evidence of use of an ambulatory aid or the claimant's subjective belief that one is needed.  *See Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) ("In our view, the record adequately supports the finding of no medical necessity.  The record is replete with references to Tripp's use of 'crutches,' 'a crutch,' or 'a cane,' but these mentions are traceable to his self-reports and to physicians' observations that he *presented* with an assistive device.  Even the statement of Dr. Motiani, who in his letter to the state agency asserted matter-of-factly that Tripp 'does need a crutch,' lacks the specificity necessary to determine whether this was the doctor's *medical* opinion or merely a restatement of what was told to him by Tripp." (emphasis in original)).

confront portions of the record that Ms. S. cites. *See* [ECF No. 7 at 19-20]. For example, as noted above, the ALJ referenced the physical consultative examination. When discussing the opinion evidence, the ALJ also explained that "Dr. Jose Panzi['s] statement that [Ms. S.] may use a wheelchair is given no weight."[8] [ECF No. 5-2 at 46.]

Moreover, the evidence that Ms. S. cites, when reviewed in its entirety, is not particularly supportive of her claim that an inability to ambulate effectively was established. For example, on November 4, 2013, a treatment note indicated an "antalgic" gait, but also that it was "full weight bearing" and that Ms. S.'s review of systems was "negative for difficulty walking, dizziness, and headache." [ECF No. 5-9 at 31.] On May 27, 2014, examination findings indicated a "painful unsteady gait," but further described that Ms. S. was using "no assistive device." [ECF No. 5-7 at 16.] While aspects of the consultative examination referenced above were supportive of difficulty walking, the examiner provided a medical source statement opining that Ms. S. did not require the use of a cane to ambulate. [ECF No. 5-10 at 83.] Shortly after the May 2016 consultative examination, Dr. Panzi did assess Ms. S. with unsteadiness and referenced that she could use a wheelchair as needed based on a gait that was "unstable, both sides, full weight bearing, cane," but also referenced that she had "not fallen in the last year." [ECF No. 5-13 at 13-14.] The Court does not conclude that the ALJ was unaware of the potentially conflicting evidence cited by Ms. S. While

---

[8] The Court agrees with the Commissioner that Ms. S. has not raised or developed any argument that the ALJ erred in evaluating the opinion evidence. [ECF No. 11 at 13.] Ms. S. also did not reply to the Commissioner's waiver argument. Accordingly, finding that waiver does apply, the Court will not reconsider the opinion evidence. *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018), *reh'g denied* (Dec. 18, 2018) (quoting *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016)) (An argument that is "perfunctory and undeveloped" may be treated as waived.).

the ALJ did not reference every aspect of the record that Ms. S. raises, the Court is able to follow how the ALJ concluded that other evidence was deserving of more weight in forming her conclusions. The standard of review forbids the Court from reweighing the evidence.

Similarly, the Court can trace the ALJ's logic as to how she concluded the other examples of an inability to ambulate effectively were not credibly established by the record. Ms. S. contends that her case is analogous to the Seventh Circuit decision in *Moss v. Astrue*, 555 F.3d 556, 562-63 (7th Cir. 2009). In *Moss*, the claimant presented significant evidence that her surgically-repaired ankle resulted in an inability to fully bear her weight on her right foot and that she needed to use a single cane to ambulate. *Id.* at 558. The Seventh Circuit explained:

> The ALJ here ignored Moss's numerous qualifications regarding her daily activities: while washing dishes she shifts her weight to the left but still experiences pain; when she last went to the store she had to use the cart for support and was unable to stay long; and when she last tried to drive the family vehicle more than a year before the evidentiary hearing, she had difficulty pushing the pedals because of a lack of control or feeling in her foot.

*Id.* at 562. The Seventh Circuit remanded because of the ignored qualifications and explained that the ALJ had also taken a too narrow view of the regulatory definition of an inability to ambulate by focusing on the use of a single cane without considering the other examples of the necessary level of functional impairment. *Id.* at 562-63. The Court is not persuaded by the Commissioner's reading of the case that for Ms. S. to get the benefit of having the ALJ consider the full regulatory definition of the listing requirement, Ms. S. must have a relevant, supportive medical opinion. However,

Ms. S. overlooks evidence that the ALJ cited that is relevant to consideration of the full regulatory definition.  Most notably, the ALJ cited evidence that "[t]hrough April 2015, [Ms. S.] rated her pain as a 2 to 3/10.  She also reported decreased pain and an increase in function which allowed her to complete more activities of daily living (Ex. C22F at 10)."  [ECF No. 5-2 at 43.]  On April 13, 2015, Ms. S.'s treating provider noted that "[o]piods decrease pain & increase function, allowing [patient] to complete ADLs [activities of daily living] more easily."  [ECF No. 5-11 at 11.]  The ALJ confronted evidence that Ms. S. had difficulty with household chores but retained the ability to complete grocery shopping with assistance loading and unloading.  [ECF No. 5-2 at 40 (citing ECF No. 5-11 at 4).]  In explaining that an ankle injury was not a severe impairment, the ALJ cited evidence that the injury occurred because of overuse. [ECF No. 5-2 at 38 (citing ECF No. 5-12 at 39 ("Denies any trauma except was using it a lot with moving, walking more etc.")).]  The evidence discussed above also consistently showed that Ms. S. was able to fully bear her weight, though with pain.  The Court finds that the ALJ's analysis of the relevant evidence sufficient to provide the logical bridge to her conclusion that the listing level severity was not met.

Finally, the Court finds that the ALJ fulfilled her duty, consistent with SSR 96-6p and *Scheck*, as discussed above, to get expert assistance establishing that no listing was medically equaled.  On December 30, 2014, M. Brill, M.D., completed disability transmittal forms covering Ms. S.'s SSI and DIB claims, [ECF No. 5-3 at 37-38], and assessed a RFC for light work, [ECF No. 5-3 at 32-34], which established a presumption that no listing was met or equaled.  The ALJ gave "great weight" to the

assessment.  [ECF No. 5-2 at 45.]  Furthermore, the ALJ gave partial weight to the medical source statement of the physical consultative examiner discussed above. [ECF No. 5-2 at 45.]  In fact, the ALJ's RFC finding adopted the consultative examiner's assessment of Ms. S.'s ability to sit, stand, and walk, at one time and in an eight-hour day, as well as her ability to ambulate without the required use of cane. *See* [ECF No. 5-10 at 83.]  Accordingly, the Court finds that the ALJ's Step Three determination was supported by substantial evidence.

### B.  Moderate Limitations of Concentration, Persistence, or Pace

Ms. S. contends that the ALJ did not adequately account for the moderate limitations in concentration, persistence, or pace that the ALJ found were supported by record.  [ECF No. 7 at 25.]  Specifically, Ms. S. asserts that the ALJ failed to account for those limitations either when assessing Ms. S.'s RFC or conveying her limitations to the VE to solicit testimony in support of the ALJ's Step Five finding that Ms. S. could perform other work.  *Id*.

Regardless of the basis, a hypothetical question posed by the ALJ to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record."  *Herron v. Shalala,* 19 F.3d 329, 337 (7th Cir. 1994); *Indoranto v. Barnhart,* 374 F.3d 470, 473-74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question [she] poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."); SSR 96-5p (S.S.A. July 2, 1996), 1996 WL 374183, at *5 (RFC assess-

ment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence"); 20 C.F.R. § 404.1545. "Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015) (citing *Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir. 2009)). "Although it is not necessary that the ALJ use the precise terminology of 'concentration,' 'persistence,' or 'pace,' we will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record."[9] *Id.* at 814 (citing *Yurt,* 758 F.3d at 857).

The Seventh Circuit has repeatedly expressed its concerns with translating moderate limitations of concentration, persistence, and pace into limitations as to the skill level demands of a job. "In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 620 (7th Cir. 2010) (citing *Stewart,* 561 F.3d at 684-85 (limiting hypothetical to simple, routine tasks did not account for limitations of concentration, persistence, and pace)); *see also Craft,* 539 F.3d at 677-78 (restricting hypothetical to unskilled work did not consider difficulties with memory, concentration or mood swings)). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given

---

[9] There is no evidence that the VE independently reviewed the record or was otherwise aware of any limitations beyond those specifically conveyed to her in hypothetical questions from the ALJ and Ms. S.'s representative during the hearing.

complexity." *O'Connor-Spinner*, 627 F.3d at 620 (citing *Stewart*, 561 F.3d at 684-85; *Craft*, 539 F.3d at 677; *see also* SSR 85-15 (S.S.A. Jan. 1, 1985) 1985 WL 56857, at *6 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.")). "[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt*, 758 F.3d at 858-59.

When assessing the "paragraph B" criteria, the ALJ found that Ms. S. had moderate difficulties with concentration, persistence, or pace.[10] [ECF No. 5-2 at 41.] Later in the decision, the ALJ explained her reliance on a consultative opinion:

> Dr. Russell Coulter-Kern opined the claimant has no limitations in performing and carrying out simple instruction and mild limitations with complex instructions. There were no limitations interacting with others (Ex. C21F). This opinion is given great weight. However, the undersigned finds her combination of mental impairments would necessitate some limitations in social interaction.

---

[10] The difficulties identified in the "paragraph B" criteria are used to rate the severity of mental impairments at Steps Two and Three of the sequential evaluation process. 20 C.F.R. § 404.1520a(d)-(e). However, the RFC assessment used at Steps Four and Five requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorder listings. SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *4. Ms. S. does not challenge the paragraph B findings, but rather assuming those findings, she challenges the sufficiency of the more detailed assessment required with the ALJ's RFC finding.

[ECF No. 5-2 at 46.] Dr. Coulter-Kern provided a medical source statement detailing her assessment that Ms. S. would have no limitations in understanding and remembering simple instructions and *carrying-out simple instructions* but would have mild limitations in understanding and remembering complex instructions and carrying-out complex instructions. [ECF No. 5-11 at 7.]

The abundant Seventh Circuit decisional authority on this issue establishes that the ALJ's RFC finding must be consistent with the evidentiary basis of their paragraph B finding, including most notably the opinion evidence that the ALJ relies upon. Ms. S. relies on Seventh Circuit precedent already discussed above in *Yurt* and *Varga* in support of her argument. [ECF No. 7 at 25.] However, the Court believes both cases to be distinguishable based on the specific functional areas that were assessed as limited by Dr. Coulter-Kern. *See Wilson v. Berryhill,* 2018 WL 300184, at *2 (S.D. Ind. Jan. 5, 2018) (distinguishing *Yurt* and *Varga* based on the underlying area(s) of functional limitation). In *Yurt,* the ALJ relied on an assessment finding the claimant moderately limited "in his ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) *perform activities within a schedule and maintain regular attendance*; (4) *perform at a consistent pace and complete a normal workday and workweek*; (5) interact appropriately with the general public; (6) get along with coworkers or peers; and (7) maintain socially appropriate behavior." *Yurt,* 758 F.3d at 854 (emphasis added). In *Varga,* the ALJ relied on an assessment finding the claimant moderately limited "in (1) understanding and re-

membering detailed instructions; (2) carrying out detailed instruction; (3) *maintaining attention and concentration for extended periods*; (4) *completing a normal workweek without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods*; (5) accepting instructions and responding appropriately to criticism from supervisors; (6) getting along with coworkers without distracting them or exhibiting behavioral extremes; and (7) responding appropriately to changes in the work setting." *Varga,* 794 F.3d at 811 (emphasis added). Here, Dr. Coulter-Kern only assessed functional limitations that involved working with complex instructions. The ALJ's RFC limiting Ms. S. to simple, routine, and repetitive work adequately accounted for the limitations that Dr. Coulter-Kern assessed. Accordingly, the Court does not find any issue with either the ALJ's RFC finding, in relevant part, or the hypothetical that was put to the VE in those same terms. *See* [ECF No. 5-2 at 92.]

### C. Subjective Symptom Evaluation

Ms. S. asserts that the ALJ erroneously dismissed the importance of Ms. S.'s extremely limited activities of daily living. [ECF No. 7 at 28.]

As noted above, the Seventh Circuit requires the Court to accord the ALJ's credibility determination considerable deference, overturning it only if is it patently wrong. Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the Court] declare it to be 'patently wrong.'" *Elder v. Astrue,* 529 F.3d 408, 413-14 (7th Cir. 2008); *Prochaska,* 454 F.3d at 738 ("Only if the trier of fact grounds his

credibility finding in an observation or argument that is unreasonable or unsupported can the finding be reversed.")  However, when the credibility determination rests on "objective factors or fundamental implausibilities rather than subjective considerations, appellate courts have greater freedom to review the ALJ's decision."  *Clifford,* 227 F.3d at 872.

On March 28, 2016, SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *2, became effective, replacing SSR 96-7p, and providing new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated.  Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility."  *Id.*  The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence."  *Cole v. Colvin,* 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).  The standard used to review an ALJ's subjective symptom evaluation remains whether the assessment is patently wrong.

Ms. S. does not engage the relevant standard of review or fully develop an argument that the ALJ's subjective symptom evaluation was patently wrong.  An ALJ may appropriately consider a claimant's daily activities, including household chores. *Craft,* 539 F.3d at 680 (citing 20 C.F.R. § 404.1529).  However, the Seventh Circuit has proscribed placing undue weight on daily activities that "ignored [the claimant's]

qualifications as to *how* [she] carried out those activities." *Craft*, 539 F.3d at 680 (emphasis in original). The Seventh Circuit has also found an ALJ's use of necessary childcare objectionable to establish the ability to work full-time when the ALJ ignored indications the claimant could take breaks and received assistance from family members. *See Gentle v. Barnhart*, 430 F.3d 865, 867-68 (7th Cir. 2005). However, as discussed above, the ALJ acknowledged that Ms. S. had difficulties performing household chores. The ALJ also cited evidence that Ms. S. was more capable of performing her activities of daily living with the use of pain medication.

Regardless, to whatever degree the ALJ's use of childcare was objectionable, Ms. S. does not engage the many other justifications that the ALJ gave for finding Ms. S.'s statements concerning her subjective symptoms not entirely consistent with the record. Under the deferential standard, an ALJ's subjective symptom evaluation need not be perfect. In *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011), the Seventh Circuit explained "[a]lthough we find some deficiencies in the ALJ's discussion of McKinzey's credibility, we conclude that the ALJ has pointed to sufficient evidence in the record to justify [his] negative determination." "The ALJ's credibility determination was not without fault. Indeed, we see some merit in two out of three of McKinzey's attacks." *Id.* The Seventh Circuit upheld the ALJ's credibility determination because the ALJ had accurately provided other reasons. *Id.* at 891. Here, the ALJ cited substantial evidence that suggested that Ms. S.'s pain, [ECF No. 5-2 at 43], seizures, and headaches, [ECF No. 5-2 at 44], were sufficiently controlled by treatment measures, including her medications, which would have allowed for her to

perform work within the framework of the ALJ's RFC finding. The ALJ also considered the relevant factors specified in SSR 16-3 to guide the ALJ's evaluation. [ECF No. 5-2 at 46]; *see* SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *7-8. Accordingly, the Court does not conclude that the ALJ's subjective symptom evaluation was patently wrong based on the limited argument presented by Ms. S.

## IV.
### Conclusion

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by Ms. S. to reverse the ALJ's decision that she was not disabled during the relevant period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.


Date: 3/25/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Lu Han
SOCIAL SECURITY ADMINISTRATION
lu.han@ssa.gov

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov